UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
                                                                   :
                                                                   :
REINHARD STIH,                                                     :
                                                                   :            22-CV-3228-ARR-RER
                    Plaintiff,                                     :
                                                                   :            NOT FOR ELECTRONIC OR
        -against-                                                  :            PRINT PUBLICATION
                                                                   :
ROCKAWAY FARMERS MARKET, INC., THE                                 :            **OPINION & ORDER**
CHEF'S TABLE, INC., MALLARY BENNETT, and                           :
STEVE DESLANDES,                                                   :
                                                                   :
                    Defendant.                                     :
                                                                   :
                                                                   X
------------------------------------------------------------------

ROSS, United States District Judge:

Defendants Rockaway Farmers Market, Inc., The Chef's Table, Inc. (together, the "Restaurants"), Mallary Bennett, and Steve DeSlandes (collectively, "defendants") move to dismiss the Second Amended Complaint filed by plaintiff Reinhard Stih. The motion to dismiss is denied.

**FACTUAL BACKGROUND**

From June 2019 to June 2020, plaintiff worked at the Rockaway Farmers Market, a business owned by Ms. Bennett and Mr. DeSlandes. *See* Second Am. Compl. ¶¶ 7, 11, 14, 17, ECF No. 17 ("Compl."). During this period of employment, Stih's job "duties primarily entailed cooking," and he also "fulfill[ed] grocery orders placed by customers for delivery during the COVID-19 pandemic." *Id.* ¶¶ 24–25. Around June 2020, Bennett and DeSlandes purchased a restaurant next door and began renovating it, eventually naming it "The Chef's Table." *Id.* ¶ 42. Plaintiff worked performing "exhaustive manual labor" during the renovation. *Id.* ¶ 43. Once The

1

Chef's Table opened in September 2020, plaintiff worked there as a chef. *Id.* ¶ 52. Plaintiff resigned his position in October 2021. *Id.* ¶ 82.

Throughout his employment at both Rockaway Farmers Market and The Chef's Table, plaintiff lacked the authority to hire or fire other employees, did not do so, did not set the schedule for other employees, reported to other managers, and lacked an ownership interest in either restaurant. *Id.* ¶¶ 26–31 (Rockaway Farmers Market), ¶¶ 63–66 (The Chef's Table). Plaintiff also alleges that he was not provided with a wage statement or wage notice, nor was he notified that defendants claimed allowances against his wages for meals or lodging. *Id.* ¶¶ 18–20, 53–55. During his employment at Rockaway Farmers Market and at The Chef's Table until June 2021, Stih was paid a salary of $500 per week, regardless of the number of hours he worked. *Id.* ¶¶ 35, 45, 70. In June 2021, Stih's salary at The Chef's Table was increased to $750 per week. *Id.* ¶¶ 74–75. Stih alleges that under each employer he often worked shifts of greater than 10 straight hours per day and over 40 hours per week, without being paid a spread of hours adjustment or overtime pay. *Id.* ¶¶ 32, 34, 39–40, 49–50, 67, 69, 79–80.

Stih further claims that after he resigned from The Chef's Table, defendants (1) attempted to coerce him into signing legal documentation outside the presence of his lawyer, (2) threatened to and did report his immigration status to the Immigration and Naturalization Service ("INS"), and (3) made false statements about him to others. *Id.* ¶¶ 86–92. The identified false statement is a text message from Bennett to a former employee of the Restaurants stating that the plaintiff "stole all of the furniture out of [defendant DeSlandes'] apartment" and was a "criminal." *Id.* ¶ 169.

Stih identifies 17 causes of action against defendants, alleging: (1) failure to pay overtime under the Fair Labor Standards Act ("FLSA") (Claims One and Two); (2) failure to pay overtime under the New York Labor Law ("NYLL") (Claims Three and Four); (3) failure to pay minimum

wage under the FLSA (Claims Five and Six); (4) failure to pay the minimum wage under the NYLL (Claims Seven and Eight); (5) failure to furnish proper wage notice and wage statements under the NYLL (Claims Nine and Ten); (6) failure to pay spread of hours under the NYLL (Claims Eleven and Twelve); (7) failure to pay wages twice per month under the NYLL (Claims Thirteen and Fourteen); (8) retaliation under the FLSA and NYLL (Claims Fifteen and Sixteen); and (9) defamation against Mallary Bennett (Claim Seventeen).

Defendants moved to dismiss the Second Amended Complaint in its entirety. *See* Defs.' Mem. in Supp. Mot. to Dismiss ("Defs.' Mem."), ECF No. 18.

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), I accept all factual allegations in the Complaint as true and draw all reasonable inferences in favor of the non-moving party. *Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529, 534 (2d Cir. 1999) (citation omitted). "[D]ismissal is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir. 2001) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). The Complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, only "a plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009). I am "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Federal Rule of Evidence 201 permits me to take judicial notice of, *inter alia*, facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Even if I believe that the accuracy of a source cannot be

reasonably questioned, in the motion to dismiss context, I may take judicial notice of documents only "to determine what statements [the documents] contain[]," not for the truth of the matters asserted therein. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). If a party wishes me to "consider additional material, Rule 12(b) requires [me] to treat the motion as one for summary judgment under Rule 56, giving the party opposing the motion notice and an opportunity to conduct necessary discovery and to submit pertinent material." *Id.* at 773.

## DISCUSSION

### I.  Materials Not In the Complaint

In support of their motion to dismiss, defendants have appended a number of materials setting forth what can only be described as the "defense version" of the facts. *See* Decl. of Jeremy Iandolo in Supp. Mot. to Dismiss ("Iandolo Decl."), ECF No. 18-12. These include declarations from defendants Bennett and DeSlandes providing a narrative of, *inter alia*, their relationship with Mr. Stih, his job duties, and their payments to him. *See generally* Iandolo Decl. Exs. A, B, ECF Nos. 18-1, 18-6. The declarations append text messages, letters, the plaintiff's LinkedIn profile, and Instagram posts purportedly relevant to this case. *See generally id.* Finally, defendants append various news articles about the Restaurants and a Chase bank statement. *See* Iandolo Decl. Exs. C, D, ECF Nos. 18-10, 18-11.

None of these materials is proper extrinsic evidence that I may consider at this stage of the proceedings. Unlike the publicly filed SEC statements at issue in *Time Warner*, none of the documents appended to defendants' motion contain facts that can be "readily determined," and the facts contained therein obviously can "be reasonably questioned," since they conflict with the allegations in the operative complaint. Rule 201 was intended to incorporate the "tradition" of "cautio[us]" application of judicial notice by "requiring that the matter be beyond reasonable

4

controversy." Fed. R. Evid. 201(b), Notes of Advisory Committee on Proposed Rules. Therefore, I will not consider any of the defendants' appended materials in determining the motion to dismiss.

## II. Exemptions

Defendants move to dismiss the FLSA and NYLL minimum wage and overtime claims and the NYLL spread of hour claims on the ground that plaintiff is an exempt employee under either the creative professional, learned professional, executive, or administrative exemptions to these statutes.

### A. Applicable Law

Section 207 of the FLSA requires that an employer pay an employee overtime compensation "at a rate not less than one and one-half times the regular rate" of that employee's compensation where that employee is employed "for a workweek longer than forty hours," unless that employee is exempt from the FLSA. *See* 29 U.S.C. § 207(a)(1). Exemptions to the FLSA overtime requirement are affirmative defenses, *i.e.*, the burden of proving an employee is exempt rests with the employer. *See Bilyou v. Dutchess Beer Distributors, Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (citing *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 394 n.11 (1960)). Further, the applicability of exemptions "must be narrowly construed." *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 204 (2d Cir. 2009) (quotation marks omitted) (quoting *A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945)). "The exemption question under the FLSA is a mixed question of law and fact. The question of how the employees spent their working time is a question of fact. The question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quotations omitted).

"[A]ny employee employed in a bona fide executive, administrative, or professional capacity" is exempt from the FLSA overtime requirement. 29 U.S.C. § 213(a)(1). The statute itself

5

does not define these terms, but applicable regulations define the exemptions and provide examples of types of work that meet each exemption. *See* 29 C.F.R. § 541.100 *et seq.* (executive employees); 29 C.F.R. § 541.200 *et seq.* (administrative employees); 29 C.F.R. § 541.300 *et seq.* (professional employees). Each exemption requires that the employee be compensated on a salary basis on a rate of not less than $684 per week. *See* 29 C.F.R. §§ 541.100(a)(1); 541.200(a)(1); 541.300(a)(1). The salary amount was increased from $455 per week as of January 1, 2020. *See* Updated and Revised FLSA Exemptions, 84 Fed. Reg. 51,230, 51,231 (Sept. 27, 2019) (codified at 29 C.F.R. pt. 541).

      The executive exemption applies to an employee "[w]hose primary duty is management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof[,] [w]ho customarily and regularly directs the work of two or more other employees[,] and [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight." 29 C.F.R. § 541.100(a)(2)–(4). The administrative exemption applies to an employee "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers[,] and [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2)–(3). The learned professional exemption applies to an employee "[w]hose primary duty is the performance of work[] requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instructions," whereas the creative professional exemption applies to an employee "[w]hose primary duty is the performance of work . . . [] requiring invention, imagination, originality or talent in a recognized field of artistic or

creative endeavor." 29 C.F.R. § 541.300(a)(2). "Primary duty" is defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The primary duty is "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole," including such factors as "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*

As applicable here, with respect to the NYLL overtime claims, New York law tracks the exemptions of the FLSA. *See* 12 N.Y.C.R.R. § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 113 of [the FLSA] . . . .").

**B. Discussion**

As an initial matter, plaintiff has pleaded that his weekly salary from approximately June 2019 to June 2021 was $500 per week.[1] Compl. ¶¶ 35, 45, 70. Plaintiff's salary did not meet the exemptions' salary requirements from January 2020 to June 2021, and therefore no FLSA exemption can apply during these time periods. For the remaining time periods, Mr. Stih's salary was above the thresholds set by the FLSA.

From June through December 2019, plaintiff was employed as a chef at Rockaway Farmers Market, and alleges that his "duties primarily entailed cooking." *Id.* ¶ 24. During this period, Stih did not have the authority to hire or fire other employees or set their schedules. *Id.* ¶¶ 26, 28. From

---

[1] Although defendants contend that "documentary evidence dispositively states that [p]laintiff was paid $750.00 plus benefits each week," Defs.' Mem. 6, I have already ruled that I cannot consider the documents appended to defendants' motion at this stage of the proceedings.

June 2021 to the end of his employment, plaintiff was employed as a chef at The Chef's Table, and alleges that his duties involved cooking for breakfast, lunch, and dinner. *Id.* ¶¶ 59–60. During this period, Stih lacked the authority to hire and fire or set employee schedules. *Id.* ¶¶ 63, 65.

Defendant first argues that the creative professional exemption applies because the interpretive regulations recognize that chefs can satisfy the creative exemption "to the extent a chef has a primary duty of work requiring invention, imagination, originality or talent." Defs.' Mem. 12 (quoting *Karropoulos v. Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 535 (E.D.N.Y. 2015)). In *Karropoulos*, the court deferred to the Department of Labor's interpretation of the FLSA regulations, which provide "that a chef can be a 'creative professional' exempt from the FLSA overtime requirements . . . if the court finds that 'the chef has a primary duty of work requiring invention, imagination, originality or talent, such as that involved in regularly creating or designing unique dishes and menu items.'" 128 F. Supp. 3d at 536 (quoting Defining and Delimiting the Exemptions for Executive, Administrative, and Professional Employees, 69 Fed. Reg. 22122-01 (Apr. 23, 2004) (codified at 29 C.F.R. pt. 451)). Plaintiff has not pleaded that, as a chef, his primary duty "requir[ed] invention, imagination, originality or talent," nor that he created or designed dishes or menu items. All that he has pleaded is that his duties involved cooking. Accordingly, I conclude that plaintiff's pleading does not demonstrate that he fits within the creative professional exemption.

With respect to the learned professional exemption, defendants emphasize that Mr. Stih "has a master's degree from Bad Leonfelden Hotel and Business School in [Austria]." Defs.' Mem. 27. They also contend that plaintiff gained on-the-job experience and instruction such that his background qualifies him as a learned professional, citing his alleged earning of a Michelin Star and statements that he was a "Master Chef." *Id.* at 27–28. Once again, these facts are contained

8

nowhere in the operative complaint, and I decline to find that Mr. Stih is an exempt learned professional at this stage of the proceedings.

Among other requirements, the executive exemption requires both that plaintiff regularly directed two or more employees and had authority to hire and fire employees or have "particular weight" given to his recommendations on hiring and firing. *See* 29 C.F.R. § 541.100(a). Plaintiff has pleaded that he had no control over hiring and firing while employed at the Restaurants. I again find that Mr. Stih was not an exempt executive based on the operative pleading in this case.

Defendants' attempts to fit Mr. Stih into the administrative exemption also fail; the operative complaint contains no allegations concerning plaintiff's "*office or non-manual work* directly related to the management or general business operations of the employer or the employer's customers," 29 C.F.R. § 541.200(a)(2) (emphasis added). The only fact to be considered at this stage of the proceedings is plaintiff's allegation that his duties entailed cooking.

In short, each of defendants' attempts to fit Mr. Stih's complaint into exemptions for which *defendants* bear the burden of proof is rejected. There will be ample opportunity in discovery for defendants to develop evidence relating to the applicability of FLSA exemptions to plaintiff's position with the Restaurants. I decline to dismiss any claims on the ground that Mr. Stih was subject to an exemption.

### III. Retaliation Claims

The FLSA makes it "unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). A plaintiff pleads a *prima facie* case of retaliation by showing three elements: "(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the

9

adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (citation omitted). "Retaliation claims made by former employees for post-employment conduct are . . . allowed under relatively narrow circumstances." *Porter v. MooreGroup Corp.*, No. 17-cv-7405 (KAM)(VMS), 2020 WL 32434, at *11 (E.D.N.Y. Jan. 2, 2020) (quotation omitted). One such circumstance "includ[es] threatening immigration-related consequences." *Id.* (collecting cases). Another is "sull[ying] the plaintiff's reputation." *See Han v. Shang Noodle House, Inc.*, No. 20-cv-2266 (PKC) (VMS), 2022 WL 4134223, at *7 (E.D.N.Y. Sept. 12, 2022) (quoting *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997)). Even if the adverse action occurs post-employment, "[b]ad faith or groundless counterclaims and other legal proceedings against employees who assert statutory rights are actionable retaliation precisely because of their *in terrorem* effect." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008). The NYLL's anti-retaliation provisions require substantially the same inquiry. *See Higueros v. N.Y. State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347 (E.D.N.Y. 2007).

Stih alleges that defendants retaliated against him following his filing of this complaint by (1) "attempting to coerce plaintiff into signing false documentation regarding his claims" outside the presence of counsel; (2) "threatening to report his immigration status;" and (3) "making false and disparaging statements about plaintiff to other people." Compl. ¶¶ 85–89, 92. Plaintiff also asserts that defense counsel's references to "immigration documents" in filings in this case are retaliatory. *Id.* ¶¶ 90–91.

As to the first element, the filing of this lawsuit clearly constitutes a protected activity known to the defendant. *See Mullins*, 626 F.3d at 53. Neither party's briefing addresses any "adverse employment action" other than the defendants' alleged threats to report Mr. Stih's immigration status and mailing of his immigration documents to INS. *See* Defs.' Mem. 31 (arguing

10

that plaintiff's immigration documents were fraudulent and stating they were sent "back to the lawful owner, the United States"); Pl.'s Opp'n to Mot. to Dismiss 12–14, ECF No. 20 (discussing only cases concerning whether threats to report immigration status constitute retaliation). Threats to report plaintiff's immigration status is plainly actionable under case law in this Circuit. *See Porter*, 2020 WL 32434, at *11. Additionally, at this stage of the proceedings, plaintiff's allegations that defendant Bennet told "a former employee of defendants" that plaintiff was a "criminal," Compl. ¶ 169, are sufficient to demonstrate retaliation, because these statements have the effect of damaging Mr. Stih's reputation within his industry of employment. *Compare Shang Noodle House, Inc.*, 2022 WL 4134223, at *7 (finding TikTok video posted by plaintiff's former employer "advising prospective employers not to hire [p]laintiff" satisfied the second prong of the retaliation test).

Defendants' conduct in attempting to coerce plaintiff to sign documentation about his claims may be outside of the "relatively narrow" circumstances of post-employment retaliation recognized in this Circuit. *See Porter*, 2020 WL 32434, at *11 (quotation omitted). "Generally speaking, the test [of whether conduct is an adverse employment action] is met if the conduct complained of 'might have dissuaded a reasonable worker from making or supporting similar charges.'" *Khurana v. Wahed Invest, LLC*, No. 18-cv-233 (LAK)(BCM), 2020 WL 364794, at *14 (S.D.N.Y. Jan. 8, 2020) (alterations omitted) (quoting *Mullins*, 626 F.3d at 53). Plaintiff's allegations regarding the incident in which defendants attempted to "coerce" him into signing documents are threadbare, and I cannot discern whether or not this incident would have dissuaded a reasonable worker from supporting their charges. Still, I cannot say that, as a matter of law, an attempt by a former employer to "coerce" a former employee into signing legal documents is not retaliation.

11

Finally, plaintiff has causally connected defendants' behavior to the filing of this lawsuit. This suit was filed in June 2022, *see* ECF No. 1, and plaintiff alleges that pertinent communications were made on June 6, 2022, June 14, 2022, and July 18, 2022, Compl. ¶¶ 88, 169. The "timing and nature of events" in this case "reinforces the connection" between the filing of this suit and defendants' alleged retaliatory behavior. *See Mullins*, 626 F.3d at 54.

Accordingly, I decline to dismiss the retaliation claim.

### IV. Defamation Claim against Defendant Bennett

To plead defamation under New York law, "a party must identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and, (4) the third parties to whom the statements were published." *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 289 (S.D.N.Y. 2006) (quotation omitted) (collecting cases). Stih alleges that on July 18, 2022, Bennett texted a former employee that Stih "stole all of the furniture out of [defendant DeSlandes'] apartment," calling Stih a "criminal." Compl. ¶ 169. Bennett's motion to dismiss again refers me to materials outside the complaint that I cannot consider, namely, the former employee's response to the statement at issue. *See* Defs.' Mem. 33.

Substantively, Ms. Bennett argues that plaintiff "has suffered no harm" from the allegedly defamatory statements. Defs.' Mem. 34. A plaintiff need not plead special damages in cases of defamation *per se*. In these cases, "the law presumes that damages will result, and they need not be alleged or proven." *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992). One type of allegation that can support an allegation of defamation *per se* is a statement "charging plaintiff with a serious crime." *Id.* Included among the New York Court of Appeals' list of "serious" crimes is larceny or burglary. *See id.* (citing Restatement (Second) of Torts § 571, cmt. g) (Am. Law Inst. 1965). The alleged statement that Stih "stole all of the furniture out of [the] apartment" therefore suffices to adequately allege defamation *per se*.

12

Because Mr. Stih has identified the statement, the person who made it (Ms. Bennett), the date on which the statements were made, and the party to whom the statement was made, he has adequately pleaded the defamation claim against Bennett, and accordingly I decline to dismiss it.

## V. Wage Notice and Wage Statement Claims

I will not address any cause of action for which defendants have not provided any argument. However, I must evaluate plaintiff's NYLL wage notice and wage statement claims to determine whether or not plaintiff has Article III standing to bring them. The Supreme Court has held that, to demonstrate standing for claims of statutory violations, a plaintiff must either allege that he suffered a tangible injury as a result of the violation or show that the harms addressed by the statute bear "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021). Courts in this district have found that plaintiffs lack standing under the *TransUnion* standard to claim violations of the NYLL wage notice and wage statement provisions. *See, e.g.*, *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649 (PKC) (ST), 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (finding no standing for wage notice claims because those claims failed to present "either a tangible injury or something akin to a traditional cause of action").

Plaintiff alleges that during each phase of his employment, he was not provided with a proper wage notice, and that this failure injured him by "denying him the right to be adequately apprised of the terms and conditions of his employment," including allowances defendants now purport to claim against his salary. *See, e.g.*, Compl. ¶¶ 19–20; *see also* Defs.' Mem. 15 ("Plaintiff was paid in currency and received room, board, and lodging, in addition to other benefits."). I agree that, on the facts of this case, plaintiff has demonstrated standing to bring the wage notice and wage statement claims. The gravamen of the complaint is that the denial of plaintiff's statutory right to these documents caused plaintiff to fail to realize that defendants were deducting certain

13

benefits from his wages, resulting in his underpayment. This is sufficient to demonstrate a tangible injury resulting from the violation. *See Mateer v. Peloton Interactive, Inc.*, No. 22-CV-740 (LGS), 2022 WL 2751871, at *2 (S.D.N.Y. July 14, 2022) (allegation that defendant's violation "resulted in the underpayment of wages" sufficient under the standard in *TransUnion*).

## CONCLUSION

In light of the above, the motion to dismiss is denied.

SO ORDERED.

Dated:    April 3, 2023                             /s/
              Brooklyn, NY                   Allyne R. Ross
                                                    United States District Judge